**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| THE EXTRADITION OF | ) | No. 24-mj-01365-DLC |
| T.C. | ) | |

(Leave to file Exhibits 1 and 2 under seal
granted on Sept. 13, 2024)

**RESPONSE TO GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF EX-**
**TRADITION AND IN OPPOSITION TO T.C.'S MOTION TO DISMISS**

Now comes Juvenile T.C., by and through undersigned counsel, and hereby respectfully

responds to the Government's Memorandum of Law in Support of Extradition and in Opposition

to T.C.'s Motion to Dismiss, Dkt. 114.

T.C., respectfully submits that probable cause is unsupported by the facts and circum-

stances of this case – specifically there is an absence of evidence from the Turkish government

about the proximate cause of O.M.A's death. Indeed, the evidence demonstrates that the death of

O.M.A was neither immediate nor a proximate result of the accident, but likely caused by failures

of first responders and subsequent medical staff to provide timely medical care which would have

prevented his death and extinguished the basis for any investigation of T.C. for causing that death

thus necessitating the rejection of the extradition request. These intervening events necessarily

break the causal chain and negate a finding of probable cause.

### I.    Legal Standard

Prior to certifying extradition, this Honorable Court must find "evidence sufficient to sus-

tain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. Article

7(c) of the Treaty on Extradition and Mutual Assistance in Criminal Matters between the United

States of American and the Republic of Turkey (hereinafter "Treaty") requires the government to

produce "[s]uch evidence as, according to the laws of the [United States], would justify arrest and

committal for trial of the person sought if the offense had been committed in the territory of the

[United States]." That standard is probable cause. *See e.g., Aguasvivas v. Pompeo*, 984 F.3d 1047,

1062 (1st Cir. 2021). Accordingly, the Court must determine "if there is evidence sufficient to

show reasonable ground to believe the accused guilty." *Kastnerova v. United States*, 365 F.3d 980,

987 (11th Cir. 2004) (internal quotations omitted). As the Supreme Court stated:

> [t]he commissioner must judge for himself the persuasiveness of the facts relied
> upon by a complaining officer to show probable cause. He should not accept with-
> out question the complainant's mere conclusions that the person whose arrest is
> sought has committed a crime.

*Giordenello v. United States*, 357 U.S. 480, 486 (1958) (emphasis added) (discussing probable

cause standard generally).

The government must present "competent and adequate" evidence to establish probable

cause. *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

> Inherent in the probable cause standard is the necessity of a determination that the
> evidence is both sufficiently reliable and of sufficient weight to warrant the conclu-
> sion. The probable cause standard does not even require that the government make
> its showing by a preponderance of the evidence. But neither is it toothless. All ev-
> idence does not have the same importance even if it is authentic and admissible.
> For example, a confession obtained by duress is inherently unreliable and would be
> given little weight even if the confession were authenticated. The reliability of the
> evidence is a factor for the reviewing court to consider as well, and potentially un-
> reliable evidence may be accorded reduced weight by the court.

*United States v. Kin-Hong*, 110 F.3d 103, 120-21 (1st Cir. 1997) (internal citations omitted).

The government bears the burden of "establishing extraditability, so the government must show,

among other things, that there is competent evidence establishing probable cause to believe that

the person named in the extradition request committed the charged offense." *Matter of Extradition*

*of Santos*, 228 F. Supp. 3d 1034, 1036 (C.D. Cal. 2017) (citations omitted); *see also Matter of*

*Extradition of Taylor,* 484 F. Supp. 3d 13, 17 (D. Mass. 2020) ("The evidence is sufficient and

probable cause is established if a person of ordinary prudence and caution can conscientiously

entertain a reasonable belief in the probable guilt of the accused."). This independent review requires a magistrate to perform a "'neutral and detached' function and not serve merely as a rubber stamp...." *Aguilar v. Texas*, 378 U.S. 108, 111 (1964). *See also Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his actions cannot be a mere ratification of the bare conclusions of others").

In conducting its review for probable cause, the Court may receive additional "explanatory" evidence. *See Koskotas v. Roche*, 931 F.2d 169, 176 (1st Cir. 1991). "While the line between 'contradictory' and 'explanatory' evidence is not sharply drawn, the purpose of permitting explanatory evidence is to afford the relator 'the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause.'" *Id.* at 175 (quoting *Matter of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978)). Admissible, *i.e.*, explanatory, evidence thus must be relevant to the question of probable cause.

## II.     The Government Fails to Prove Requisite Causation

T.C., is being extradited for an alleged violation of Article 85 of the Turkish Criminal Code. Article 85, like the United States equivalents, Dkt. 114 at 15, requires that a defendant "cause the death of another". Thus, the government must affirmatively prove as an element of the offense that "the defendant's actions were the proximate cause of death." *Kligler v. Att'y Gen.*, 491 Mass. 38, 49 (2022). Meaning that "[i]f a series of events occur between the conduct and the ultimate harm, the court must determine whether those intervening events have ... extinguished the element of proximate cause and become a superseding cause of the harm." *Id.* (quoting *Kent v. Commonwealth*, 437 Mass. 312, 321, 771 N.E.2d 770 (2002)); *see also United States v. Cooke*, 18 M.J.

152, 154–55 (C.M.A. 1984) ("Even though the defendant was criminally negligent in his conduct it is possible for negligence of the deceased or another to intervene between his conduct and the fatal result in such a manner as to constitute a superseding cause, completely eliminating the defendant from the field of proximate causation."). Where, as here, "a person inflicts on another a wound not in itself calculated to produce death, and the injured person dies solely as a result of the improper treatment of the wound … the fact that the death was caused by medical mistreatment is a good defense to a charge of homicide." *People v. McGee*, 31 Cal. 2d 229, 240–41, 187 P.2d 706, 713 (1947).

In support of alleged causation, the Turkish government states rather conclusory, "that the individual died [due] to the internal bleeding arising from the impact, he had due to the accident" Dtk. 70-3 at 4. The extradition request goes on to state that an autopsy was requested to "determine the certain cause of death and a detailed report is expected." *Id.* That detailed report, however, was never submitted in support of extradition.

Indisputably, the accident occurred at 11:20pm on March 1, 2024, *id.*, which is when emergency responders were called to the scene of the accident. *See* Exhibit 1 (Response from Turkish Ministry of the Interior). O.M.A's death did not result from the collision. Dkt. 70-3 at 5. He was, instead, taken by emergency personnel to S.B.Ü Şişli Hamidiye Etfal Eğitim Araştırma Hastanesi, a hospital nearly 27 km away from the scene of the accident, rather than other, closer treatment facilities. *See* Exhibit 2 (Medical Records of O.M.A); *see also* Exhibit 3 (Locations of three

hospitals all less than 5 km away from the accident location). Hospital records show that O.M.A was treated by the hematology department, where a "plasma" and a "blood bank" sample were requested at 12:42 am, a sample was drawn at 12:52 am, the "plasma" sample was accepted at 12:56 am and the "blood bank" sample was accepted at 4:21 am. The "plasma" sample was ultimately approved by a specialist at 1:57 am and the "blood bank" sample was approved at 5:54 am. Exhibit 2. No reason was provided for the 1 hour and 22-minute delay from the time of the accident to the time that O.M.A was admitted to the hospital, much less the substantially longer delay until O.M.A's treatments were approved by providers. The injuries that O.M.A suffered were primarily to his leg, Dkt. 70-3 at 4, and at the time of the collision he was in the same location as T.A., who survived. *Id.* at 5. In the ordinary course, no one expects to die from a treatable leg injury. There was no allegation of an injury to his head, to his chest, to his heart, to his abdomen as contrasted to bleeding from his lower extremities – an injury that if responded to in a timely fashion would not – without proof of further injury that is lacking here – cause death.

It stands to reason that O.M.A's death was not "proximately" caused by the collision or T.C.'s conduct. Rather death likely resulted from decisions made by first responders to forego taking O.M.A. to a closer facility and subsequent decisions by medical staff to delay his treatment for hours after the accident. These intervening and superseding events thus negate the necessary finding of "proximate" cause.

Second, in accordance with the Honorable Court's order, Dkt. 130, which prohibits any additional briefing on issues relating to T.C.'s pending motion to dismiss the complaint for failure to satisfy the requirements of Articles 1 and 7 of the US-Turkey Extradition Treaty, Dkt. 87, T.C. respectfully relies on his previous submission and intends to address the matter further at the presently scheduled October 15, 2024, extradition hearing.

Third, T.C.s conditions of confinement since his arrest have been in conflict with both the Due Process and Cruel and Unusual clauses of the Fifth and Eighth Amendments to the United States Constitution.  T.C. adopts all his prior pleadings to contend that it is incompatible with humane standards for imprisonment – particularly for imprisonment of a juvenile – to be held in solitary confinement, *i.e.* in isolation for many days for over 23 hours, on many other days over 18-19 hours (at times without running water), to be denied access to mental health treatment or educational resources, and that the Court should not implicitly sanction such lawlessness by failing to sanction the government which is in control of the decisions as to where to detain T.C. by allowing their extradition request. *See Mary & Crystal v. Ramsden,* 635 F.2d 590, 598 (7th Cir. 1980) (affirming jury finding of "cruel and unusual" punishment when mental health provider denied juvenile's request for treatment while she was in isolation); *Jackson v. Meachum*, 699 F.2d 578, 584 (1st Cir. 1983) ("the indefiniteness of segregated confinement generates, with the lapse of time, either a requirement of due process or a procedural requirement activated by the Eighth Amendment—a need for systematic, periodic review of the prisoner's condition, his ability to reenter the general population, and the feasibility of providing means of lessening the rigors of his segregation."); *Kelly v. Brewer*, 525 F.2d 394 (8th Cir.1975) (same); *Santana v. Collazo*, 714 F.2d 1172, 1179 (1st Cir. 1983) ("It would not be unreasonable to assume that society's conscience

might be shocked by the conditions of confinement imposed on a juvenile in an isolation cell, when it would be unwilling to label the same treatment, given to an adult, cruel and unusual.").

For the reasons herein and the additional reasons to be presented at the October 15, 2024 hearing, T.C.'s respectfully requests this Honorable Court to deny the government's request for a certificate of extraditability.

Respectfully Submitted,

T.C., a Juvenile
By his attorneys,

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.
BBO #519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700

*/s/ Victoria Kelleher*
Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
978-744-4126

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, September 13, 2024, and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.