IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF ) | |
| THE EXTRADITION OF ) | No. 24-mj-01365-DLC |
| TOK ) | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF EYLEM TOK'S EXTRADITION**

The government respectfully submits the following supplemental brief in further support of the extradition of Eylem Tok to address the two issues the Court identified at the conclusion of the October 9, 2024 hearing: (1) whether Tok is "being prosecuted for or . . . charged with an offense" within the meaning of the Treaty[1]; and (2) the scope of the Court's review in determining if probable cause exists to believe that Tok committed the offenses for which the Republic of Türkiye seeks her extradition.

**I.    Tok Is "Being Prosecuted for or . . . Charged with an Offense" Within the Meaning of the Treaty.**

Tok argues that because she has not been indicted or otherwise formally charged in Türkiye, Articles 1 and 7 of the Treaty have not been satisfied. Dkt. 143 at 27-29. Article 1 provides for the extradition of persons "who are being prosecuted for or have been charged with an offense, or convicted of an offense, or are sought by the other Party for the enforcement of a judicially pronounced penalty for an offense . . . ." Dkt. 73-1 at 9. Article 7 lists the items that must be included in an extradition request, namely the warrant for arrest, a statement of the facts, evidence sufficient to justify arrest and committal for trial, evidence sufficient to establish that the person sought is the person named in the warrant, and the text of the laws governing the offense,

---

[1] Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Turkey, U.S.-Turk., June 7, 1979, 32 U.S.T. 3111.

punishment, and statute of limitations. *Id.* at 14-15.  Article 7 does not require the inclusion of a charging document. *Id*.

The plain language of the Treaty does not support Tok's argument. Article 1 allows for the extradition of a fugitive in multiple different criminal postures, including where no formal charges have been filed. In particular, Article 1 requires the surrender of a fugitive who is being prosecuted for an extraditable offense "***or***" who has been charged with an offense (or other postures not relevant to this case). If formal charges were required to obtain extradition in a pre-conviction case, such as this one, there would be no need to include the first part of the clause in Article 1. Indeed, the alternative phrasing of the treaty language signals that the treaty partners intended to allow for extradition of a person who is wanted for prosecution irrespective of whether the person has been "charged" with an offense. The omission of any reference to a charging document in Article 7 further confirms this reading. Here, Türkiye has demonstrated that it intends to prosecute Tok for the offenses for which extradition is sought, and therefore, extradition is not barred by Articles 1 and 7 of the Treaty.[2]

Moreover, every circuit to consider arguably less flexible language in extradition treaties has concluded that formal charges are not required and that extradition for further investigation and prosecution is permissible. Indeed, Tok has been unable to point to a single case that supports her position.

---

[2] "For the reasons explained, Eylem Tok committed both offences. There are no circumstances, preventing the prohibition of her arrest. In terms of the offence of concealing, altering and destroying the evidence of the offence; the fact that the evidence is linked to the evidence within the scope of the offence of protecting the offender, makes the extradition of Eylem Tok necessary for the Turkish judicial authorities to evaluate her legal status and to carry out investigation *and prosecution* about her due to both offences." Dkt. 73-4 at 25 (emphasis added).

As a matter of first impression, the Seventh Circuit found that similar language in the U.S.-Sweden Treaty did not require formal charges. *Matter of Assarsson*, 635 F.2d 1237 (7th Cir. 1980), *cert. denied* 451 U.S. 938 (1981). The extradition request in *Assarsson* included an arrest warrant issued by a Swedish court, although no formal charging document had yet been filed. *Id.* at 1239. Like the Treaty here, the treaty with Sweden did not require the filing of formal charges "as a prerequisite to extradition." *Id.* at 1242. Rather, like here, the treaty in *Assarsson* provided for the extradition of "those persons found in its territory who have been charged with or convicted of an of the offenses specified in Article II . . . ." *Id.* (quoting U.S.-Sweden Treaty). The Seventh Circuit found that the "word 'charge' is thus used in contrast to 'convicted'" and the term "charged" "is used in the generic sense only to indicate 'accused.'" *Id.* The court found that the documents that must accompany the extradition request—including a "'duly certified or authenticated copy of the warrant of arrest or other order of detention'"—did not include a formal charging document. *Id.* at 1243 (quoting U.S.-Sweden Treaty). The absence of a requirement that the requesting party provide a copy of a charging document in the extradition request led the court to conclude that formal charges were not a prerequisite to extradition. *Id.*

In *Emami v. U.S. Dist. Court for the Northern Dist. of Cal.*, 834 F.2d 1444 (9th Cir. 1987), the Ninth Circuit relied on the reasoning of *Assarsson* to hold that an individual sought for "'detention for investigation'" without formal charges could be extradited under the terms of the U.S.-Germany Treaty. *Id.* at 1446. That treaty provided for the extradition of persons "'who have been charged with an offense or are wanted by the other Contracting Party for the enforcement of a judicially pronounced penalty or detention order . . . .'" *Id.* at 1448 (quoting U.S.-Germany Treaty). Like here and in *Assarsson*, the treaty required the requesting party to include in the extradition request the arrest warrant but not a formal charging document. *Id.* And like in

*Assarsson*, the Ninth Circuit chose not to wade into whether there had been compliance with foreign criminal procedure "both out of respect for German sovereignty and because we recognize the chance of erroneous interpretation." *Id.* at 1449.

The Second Circuit weighed in on this issue in *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir. 2009). There, the U.S.-Serbia Treaty "authorizes the extradition of an individual who has been 'charged' with a crime." *Id.* at 54 (quoting U.S.-Serbia Treaty). Despite that "Bosnia had failed to charge him formally with an extraditable offense," the Second Circuit found the interpretation of "charged" not to require a formal charging document "reasonable" because "it gives meaning to treaty language stating that an individual must be 'charged' with an offense in order to be extradited, while avoiding unwarranted incursions into the fine details of foreign criminal procedure." *Id.* at 65. Ultimately the Second Circuit held Sacirbey was not extraditable, not because he had not been formally charged, but because the Bosnian court that issued his arrest warrant had been dissolved, and thus the requirement of providing a valid arrest warrant with the extradition request could not be satisfied. *Id.* at 66-67.

Although in dicta, the First Circuit considered the question in *Aguasvivas v. Pompeo*, 984 F.3d 1047 (1st Cir. 2021). There, the court stated, "we readily agree with the holdings and the rationale in both *Emami* and *Assarsson*" and "we could rule for the government in this case were the language of this treaty materially similar to the language of those treaties." *Id.* at 1060. However, the language in the U.S.-Dominican Republic Treaty at issue in *Aguasvivas* was materially different than the U.S.-Türkiye Treaty, and therefore the ultimate holding of *Aguasvivas* is of limited value to the issues presented here. The U.S.-Dominican Republic Treaty required, in addition to an arrest warrant, "'a copy of the document setting forth the charges against the person sought.'" *Id.* at 1055 (quoting U.S.-Dominican Republic Treaty). In considering whether an arrest

4

warrant could do double duty, the First Circuit held that such a reading "would render superfluous a relatively bespoke requirement" of a separate document setting forth the charges—a requirement not present in the U.S.-Türkiye Treaty.

The Fourth Circuit's decision in *Vitkus v. Blinken*, 79 F.4th 352 (4th Cir. 2023), does not change the analysis. There, the U.S.-Lithuania Treaty specifically required "'a copy of the charging document.'" *Id.* at 363 (quoting U.S.-Lithuania Treaty). In the face of this explicit requirement, the Fourth Circuit found that the treaty "requires a discrete document that initiates criminal charges." *Id.* at 363. In contrast, there is no such provision in the U.S.-Türkiye Treaty.

Given the plain language of the Treaty, the weight of the case law supporting the government's position, and the absence of case law supporting Tok's position, Tok is "being prosecuted for or . . . charged with an offense" within the meaning of the Treaty.

## II. Tok Cannot Escape a Probable Cause Finding by Questioning the Credibility of the Evidence.

Tok also attempts to avoid a finding of probable cause by pointing to alleged inconsistencies and questioning the credibility of the evidence in the extradition request. This is wholly improper. Credibility determinations are outside the scope of an extradition proceeding. *See, e.g.*, *Noeller v. Wojdylo*, 922 F.3d 797, 807 (7th Cir. 2019) ("Evidence that contradicts the demanding country's proof or poses questions of credibility—i.e., contradictory evidence—is off-limits."); *Santos v. Thomas*, 830 F.3d 987, 993 (9th Cir. 2016) (en banc) ("an individual contesting extradition may not . . . call into question the credibility of the government's offer of proof"); *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973) ("The judge's refusal to examine the credibility of the testimony and statements included in the translated material was clearly proper, since the declarants were not before him."). While the "credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extradition magistrate," *Quinn v.*

*Robinson*, 783 F.2d 776, 815 (9th Cir. 1986), a lack of credibility generally "does not completely obliterate the evidence of probable cause." *Man Seok Choe v. Torres*, 525 F.3d 733, 740 (9th Cir. 2008) ("[Witness's] lack of credibility is merely a weakness in Korea's case.") (internal quotation marks, citation, and alterations omitted); *cf. Barapind v. Enomoto*, 400 F.3d 744, 749-50 (9th Cir. 2005) (en banc) (finding that witness's recantation did not obliterate probable cause because recantation "constituted conflicting evidence, the credibility of which could not be assessed without a trial."). Should Tok wish to impugn the credibility of the evidence by pointing to any alleged inconsistencies, she must do so in proceedings before the Turkish court. Such issues are beyond the scope of this Court's review in an extradition proceeding. *See, e.g., Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993) (citation omitted) (relator "has no right to attack the credibility of either [affiant] at this stage of the proceedings; issues of credibility are to be determined at trial."). Unlike this Court, the Turkish court will have before it all of the evidence, and thus be in a better position to assess the credibility of that evidence.

          Respectfully submitted,

          JOSHUA S. LEVY
          Acting United States Attorney

By:   */s/ Kristen A. Kearney*
      KRISTEN A. KEARNEY
      Assistant U.S. Attorney

Date: October 16, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

          */s/ Kristen A. Kearney*
          KRISTEN A. KEARNEY
          Assistant U.S. Attorney